**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:26-CV-20556-JB-EGT

ELIZABETH MADDEN, individually
and as co-trustee of the Elizabeth Ludwig
Madden Revocable Trust,

       Plaintiff,

v.

THE NORTHERN TRUST COMPANY,
a foreign banking corporation and
co-trustee of the Elizabeth Ludwig Madden
Revocable Trust,

       Defendant.

**DEFENDANT THE NORTHERN TRUST COMPANY'S MOTION FOR PARTIAL**
**DISMISSAL OF THE COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

RELEVANT FACTUAL BACKGROUND....................................................................................4

      A.      The Allegations in Plaintiff's Complaint...............................................................4

      B.      Northern Trust's Efforts to Remedy Walters' Wrongdoing .................................. 5

LEGAL STANDARD.....................................................................................................................6

ARGUMENT .................................................................................................................................7

      I.      EACH OF PLAINTIFF'S INTENT-BASED CLAIMS (COUNTS 1, 3, AND 9) FAIL BECAUSE THE COMPLAINT DOES NOT PLEAD ANY INTENTIONAL CONDUCT ATTRIBUTABLE TO NORTHERN TRUST ....... 7

            A.      Counts 1, 3, and 9 Each Require Intentional Misconduct........................... 7

            B.      The Complaint Fails to Allege Northern Trust Acted with Knowledge or Intent........................................................................................................ 9

      II.      PLAINTIFF FAILS TO MEET THE HEIGHTENED PLEADING STANDARD REQUIRED FOR COUNTS 3, 9, AND 10 (FRAUD AND CFAA)................................................................................................................ 11

      III.      COUNTS 2, 4, 6, AND 10 (VICARIOUS LIABILITY) SHOULD BE DISMISSED BECAUSE THE COMPLAINT MAKES CLEAR THAT WALTERS WAS ACTING FOR HIS OWN PERSONAL BENEFIT RATHER THAN FOR NORTHERN TRUST ....................................................... 13

            A.      The Complaint's Own Allegations Make Clear that Walters Was Acting Outside the Scope of His Employment......................................... 13

            B.      The Complaint Fails to Allege that Northern Trust Ratified Walters' Actions ................................................................................................. 15

            C.      Count 10 (Vicarious Liability Under the CFAA) Should Be Dismissed For an Additional Reason ......................................................... 16

      IV.      COUNTS 9 AND 10 (CFAA) SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A CLAIM FOR "DAMAGE OR LOSS" UNDER THE CFAA ................................................................................................ 17

CONCLUSION.............................................................................................................................19

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agilysys, Inc. v. Hall*,
258 F. Supp. 3d 1331 (N.D. Ga. 2017) ...................................................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................................6

*Bailey v. Covington*,
317 So. 3d 1223 (Fla. Dist. Ct. App. 2021) ............................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................................6, 7

*Bruhl v. Conroy*,
2007 WL 983228 (S.D. Fla. Mar. 27, 2007) ...........................................................................8

*Campo v. Uber Technologies, Inc.*,
407 So. 3d 503 (Fla. 3d DCA 2025) ......................................................................................13

*Cordero v. Transamerica Annuity Serv. Corp.*,
71 F.4th 843 (11th Cir. 2023) ............................................................................................8, 10

*Day v. Datta*,
2024 WL 6862109 (S.D. Fla. Sept. 30, 2024) .......................................................................11

*Doe #1 v. Red Roof Inns, Inc.*,
21 F. 4th 714 (11th Cir. 2021) ...............................................................................................15

*Doe v. Dartmouth–Hitchcock Med. Ctr.*,
2001 WL 873063 (D.N.H. July 19, 2001) .............................................................................16

*Duncan v. NCS Pearson, Inc.*,
2023 WL 8250639 (S.D. Fla. Oct. 10, 2023)..........................................................................14

*Funding Metrics, LLC v. Decision One Debt Relief LLC*,
2019 WL 861268 (S.D. Fla. Feb. 22, 2019) ............................................................................9

*Garfield v. NDC Health Corp.*,
466 F.3d 1255 (11th Cir. 2006) .........................................................................................7, 11

*Horne v. Soc. Sec. Admin.*,
359 F. App'x 138 (11th Cir. 2010) ...........................................................................................8

*LanChile Airlines v. Connecticut Gen. Life Ins. Co. of N. Am.*,
 759 F. Supp. 811 (S.D. Fla. 1991) ......................................................................10

*Letourneau v. City of Pembroke Pines*,
 2017 WL 9362841 (S.D. Fla. Apr. 4, 2017) ...................................................13, 14

*McConley v. Wells Fargo Bank, N.A.*,
 2025 WL 3190880 (N.D. Fla. Oct. 15, 2025) ......................................................14

*Mortg. Now, Inc. v. Stone*,
 2010 WL 11519201 (N.D. Fla. Sept. 29, 2010) ....................................................18

*My Energy Monster, Inc. v. Gawrych*,
 2021 WL 6125579 (M.D. Fla. Sept. 29, 2021) .....................................................18

*National Auto Lenders, Inc. v. SysLOCATE, Inc.*,
 686 F. Supp. 2d 1318 (S.D. Fla. 2010) ...............................................................15

*Noshirvan v. Couture*,
 2025 WL 1769669 (M.D. Fla. Jun. 26, 2025)......................................................15

*Optio Rx, LLC v. Crestview City Pharmacy, Inc.*,
 2023 WL 11762892 (N.D. Fla. Nov. 9, 2023)......................................................15

*Oxford Asset Mgmt. v. Jaharis*,
 297 F.3d 1182 (11th Cir. 2002) .........................................................................7, 9

*PLC Trenching Co., LLC v. Newton*,
 2011 WL 13135653 (N.D.N.Y. Dec. 12, 2011)....................................................16

*Prentice v. R.J. Reynolds Tobacco Co.*,
 338 So. 3d 831 (Fla. 2022)..................................................................................12

*Ruff v. Allianz Life Ins. Co. of N. Am.*,
 2020 WL 8918198 (M.D. Fla. July 9, 2020) ........................................................11

*Schwartz v. ADP, Inc.*,
 2021 WL 5760434 (M.D. Fla. Dec. 3, 2021)........................................................18

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
 313 F. Supp. 3d 1056 (N.D. Cal. 2018) ...............................................................11

*The Northern Trust Company v. Walters*,
 Case No. 1:25-cv-23802-RKA (S.D. Fla.)........................................................ *passim*

*TracFone Wireless, Inc. v. Adams*,
 98 F. Supp. 3d 1243 (S.D. Fla. 2015) ....................................................................8

iii

*Trademotion, LLC v. Marketcliq, Inc.*,
   857 F. Supp. 2d 1285 (M.D. Fla. 2012) ...................................................................17

*Watson v. Kingdom of Saudia Arabia*,
   159 F. 4th 1234 (11th Cir. 2025) ...........................................................................14

*Watts v. City of Hollywood, Florida*,
   146 F. Supp. 3d 1254 (S.D. Fla. Nov. 17, 2015) ...................................................14

*WEC Carolina Energy Sols. LLC v. Miller*,
   687 F.3d 199 (4th Cir. 2012) .................................................................................17

**STATUTES**

18 U.S.C. § 1030 ................................................................................................ *passim*

18 U.S.C. § 1030(a)(4) ...........................................................................................8, 11

18 U.S.C. § 1030(e)(8) ...............................................................................................17

18 U.S.C. § 1030(e)(11) .............................................................................................17

18 U.S.C. § 1030(g) ...............................................................................................8, 17

Fla. Stat. § 415.102 (8)(a)(1) .......................................................................................8

Fla. Stat. § 415.1111 ..................................................................................5, 7, 8, 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9 ........................................................................................................11

Fed. R. Civ. P. 9(b) .......................................................................................... *passim*

Fed. R. Civ. P 12(b)(6) .............................................................................................1, 6

Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant The Northern Trust Company ("Northern Trust") by and through undersigned counsel, hereby respectfully moves to dismiss Counts 1-4, 6, 9, and 10 of the Complaint.

## PRELIMINARY STATEMENT

The undisputed facts demonstrate that both Plaintiff Elizabeth Madden ("Plaintiff") and Northern Trust were the victims of an elaborate scheme devised by Northern Trust's former employee, Christopher Walters ("Walters"). Specifically, Walters abused his position and access to Northern Trust's systems, evaded Northern Trust's controls, and engaged in criminal misconduct to misappropriate funds from Plaintiff for his own personal gain. No matter how strong a company's systems and controls may be, no company is immune to dishonest actors like Walters when they devise schemes aimed at circumventing those very safeguards and then take steps to conceal their wrongdoing.

The Complaint makes clear that Walters acted "for his own personal benefit," describing him as a "rogue employee" who used Plaintiff's misappropriated funds to pay his personal credit card bills and fund his fitness-related business venture. The Complaint also makes clear that Northern Trust was not aware of Walters' criminal scheme until after his employment with Northern Trust had ended. While the Complaint alleges that Northern Trust failed to maintain adequate internal controls that would have detected Walters' wrongdoing, it makes no allegation that Northern Trust itself did anything to further it.

Since discovering Walters' misappropriation, Northern Trust has done everything in its power to remedy the impact of Walters' misconduct and hold him accountable for his actions. As referenced in the Complaint, starting in March 2025, Northern Trust launched a comprehensive internal investigation, retained outside counsel and a forensic accounting firm to aid in its

1

investigation, reported Walters' criminal conduct to state and federal law enforcement authorities, and commenced efforts to get Walters arrested. Moreover, more than six months before the Complaint in this action was filed, Northern Trust filed a civil action against Walters in this very Court, which recently resulted in a final default judgment against him.

Additionally, Northern Trust has always appreciated the financial harm Walters caused Plaintiff and has sought to make her whole. In August 2025, after completing its internal investigation into Walters' unauthorized activity in Plaintiff's accounts, Northern Trust tendered to Plaintiff a check for more than $6 million, representing the entire amount Walters misappropriated from Plaintiff plus lost opportunity costs. Northern Trust imposed no conditions on acceptance of the check, nor did it request a release; it was simply an unconditional tender that sought to make Plaintiff whole. Plaintiff's counsel, however, refused to accept the check and immediately returned it. That check has been sitting in Northern Trust's vault since August 2025, and Northern Trust remains willing to tender it again to Plaintiff at any time.

As set forth below, the Court should partially dismiss Plaintiff's Complaint on four independent bases.

*First*, Plaintiff alleges several causes of action against Northern Trust for which intent is a required element. All of these claims should be dismissed for failure to state a claim because the Complaint does not allege that Northern Trust committed any intentional acts in furtherance of Walters' scheme. To the contrary, the Complaint expressly alleges that Northern Trust *was not even aware* of the scheme until after it had ended. While Plaintiff seeks to impute Walters' knowledge and intent to Northern Trust, Florida courts have made clear that an employee's bad acts are not imputed to an employer where, as here, the employee acts clandestinely for his own personal benefit rather than his employer's.

2

*Second*, the Complaint fails to meet the heightened pleading standard applicable to its fraud claims. Plaintiff makes no attempt to identify any specific statements or omissions that were made, or the time or place of such statements or omissions. Moreover, the Complaint makes no attempt to allege what Northern Trust obtained as a consequence of the fraud, as required to plead fraud with particularity, nor does Plaintiff identify any actions she took in reliance on any supposed misstatements.

*Third*, the Complaint fails to support its claims seeking to hold Northern Trust vicariously liable for the bad acts of Walters. Florida law is clear that an employer is not vicariously liable for an employee's actions where he acts outside the scope of his employment. Here, the Complaint expressly alleges that Walters was a "rogue employee" who was acting "for his own personal benefit." The Complaint makes no allegation that Walters' scope of employment included the criminal activity he engaged in, nor does it allege that Walters' misconduct benefited Northern Trust in any way.

*Fourth*, the Complaint fails to state a claim under the Computer Fraud and Abuse Act because it does not identify any "damage or loss" that can be compensated under the Act. The CFAA is essentially a computer hacking statute, which compensates individuals who suffer damage or interruptions to their computer systems due to unauthorized access by a bad actor. Plaintiff does not allege any damage or interruptions to her computer systems resulting from Walters' scheme.

Accordingly, Northern Trust respectfully requests that the Court partially dismiss Plaintiff's Complaint as to Counts 1-4, 6, 9, and 10.

3

## RELEVANT FACTUAL BACKGROUND

### A.       The Allegations in Plaintiff's Complaint

The Complaint alleges that Walters, a former Northern Trust employee, engaged in a years-long embezzlement scheme through which he misappropriated Plaintiff's assets by undertaking a series of "unauthorized transfers and withdrawals" from her Northern Trust accounts. Compl. ¶¶ 1-2, 42. Plaintiff alleges that Walters engaged in these unauthorized acts "for his own personal benefit and for purposes unrelated to the Trust." *Id.* ¶ 42. Specifically, Plaintiff alleges that Walters "used stolen trust assets to fund failed business ventures such as his failed gym, to make monthly rental payments on his failed gym, to satisfy personal credit card debts, and to support his lifestyle." *Id.* ¶ 16.

The Complaint describes Walters as a "rogue employee" and alleges that his employment with Northern Trust ended in the Fall of 2024. Compl. ¶¶ 32, 49. The Complaint further alleges that Northern Trust "failed to uncover" Walters' criminal conduct during the course of his employment with the company. *Id.* ¶ 52; *see also id.* ("Northern Trust never caught on to the fraud and theft."). Instead, the Complaint alleges that Walters' scheme only came to light after Plaintiff moved her trust assets to a different financial institution in February 2025, at which time Walters' misconduct was first uncovered. *Id.* ¶ 51.

Plaintiff alleges that the reason Northern Trust "never caught on" to Walters' criminal scheme is because it "lacks the crucial safeguards, systems, management, and regulatory compliance procedures necessary to prevent financial theft by its employees." Compl. ¶ 17. Plaintiff further alleges that Northern Trust "failed to effectuate and implement its own internal controls designed to safeguard Mrs. Madden from Vice President Walters's treachery," and that

4

Northern Trust "failed to prudently supervise Vice President Walters in his administration of Mrs. Madden's Trust." *Id.* ¶ 18.

The Complaint asserts ten causes of action against Northern Trust:

- <u>Count 1</u>: Civil Exploitation of a Vulnerable Adult (Fla. Stat. § 415.1111)

- <u>Count 2</u>: Vicarious Liability for Civil Exploitation of a Vulnerable Adult (Fla. Stat. § 415.1111)

- <u>Count 3</u>: Fraud

- <u>Count 4</u>: Vicarious Liability for Fraud

- <u>Count 5</u>: Breach of Fiduciary Duty

- <u>Count 6</u>: Vicarious Liability for Breach of Fiduciary Duty

- <u>Count 7</u>: Negligent Supervision

- <u>Count 8</u>: Negligence

- <u>Count 9</u>: Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)

- <u>Count 10</u>: Vicarious Liability for Violations of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)

**B.** **<u>Northern Trust's Efforts to Remedy Walters' Wrongdoing</u>**

The Complaint alleges that Northern Trust retained outside counsel shortly after discovering Walters' scheme, and that Northern Trust has attempted to coordinate with and facilitate law enforcement efforts to hold Walters accountable for his criminal conduct. Compl. ¶¶ 54, 56.

As time passed, Northern Trust's concerns increased that Walters would not be held answerable for his actions and that he might perpetrate crimes again against another unsuspecting corporation or person, possibly somewhere else in Florida. To put the world on notice and try to hold him accountable, on August 22, 2025, Northern Trust filed a civil action against Walters in this Court, asserting claims for breach of fiduciary duties of loyalty and care and fraud. *See The*

*Northern Trust Company v. Walters*, Case No. 1:25-cv-23802-RKA (S.D. Fla.) ("*Walters*"), Dkt. # 1 ("*Walters* Complaint"). Northern Trust's allegations against Walters in the *Walters* Complaint are largely consistent with Plaintiff's description of Walters' criminal scheme in her Complaint in this action. Specifically, the *Walters* Complaint alleges that Walters orchestrated a criminal scheme to steal Plaintiff's assets for his own "personal benefit," using the funds to pay his personal credit card bills and to fund his "fitness gym business venture." *Walters* Complaint ¶¶ 11-12. The *Walters* Complaint further alleges that Walters' misconduct went undetected by Northern Trust, and that once Northern Trust discovered Walters' scheme, it engaged an outside law firm to conduct an investigation and submit reports to law enforcement authorities. *Id.* ¶¶ 11-12, 16.

Walters failed to appear in the *Walters* action. Accordingly, Northern Trust filed a motion for default judgment on January 12, 2026, which this Court granted on February 4, 2026. *See Walters*, ECF Nos. 21, 24. As detailed in the sworn declaration filed in support of Northern Trust's default judgment motion, the outside counsel and forensic accounting firm retained by Northern Trust reviewed more than 45,000 documents as part of their investigation to assess "the scope of Walters' scheme and determine the amount of funds Walters stole" from Plaintiff. *Walters*, ECF No. 21-1 ¶ 12. Collectively, Northern Trust's outside counsel and forensic accountants spent more than 1,300 hours conducting their investigation as well as on subsequent engagement with law enforcement authorities in an effort to hold Walters accountable for his actions. *Id.* ¶ 13.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must accept well-pleaded facts as true, but "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

A complaint that asserts a fraud claim must meet the heightened pleading standard established by Fed. R. Civ. P. 9(b). Rule 9(b) requires allegations of fraud to be stated with particularity, answering such fundamental questions as to "who, what, when, where, and how." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

**ARGUMENT**

**I.     EACH OF PLAINTIFF'S INTENT-BASED CLAIMS (COUNTS 1, 3, AND 9) FAIL BECAUSE THE COMPLAINT DOES NOT PLEAD ANY INTENTIONAL CONDUCT ATTRIBUTABLE TO NORTHERN TRUST**

Counts 1, 3, and 9 of Plaintiff's Complaint each require a showing of *intentional* misconduct. The Complaint fails to allege any intentional misconduct attributable to Northern Trust as opposed to that of its former employee, Walters. Accordingly, the Court should dismiss Counts 1, 3, and 9 of the Complaint.

**A.     Counts 1, 3, and 9 Each Require Intentional Misconduct**

Counts 1, 3, and 9 of Plaintiff's Complaint each require a showing of intentional or willful misconduct.

Count 1: Civil Exploitation of a Vulnerable Adult (Fla. Stat. § 415.1111). Florida's Adult Protective Services Act ("FAPSA") provides a cause of action to a "vulnerable adult who has been abused, neglected, or exploited." Fla. Stat. § 415.1111. Plaintiff seeks to hold Northern Trust liable for "civil exploitation," which FAPSA defines as acts or omissions from a person who "[s]tands in a position of trust and confidence with a vulnerable adult and ***knowingly***, by deception or intimidation, obtains or uses, or endeavors to obtain or use, a vulnerable adult's funds, assets, or

7

property **with the intent to temporarily or permanently deprive a vulnerable adult** of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the vulnerable adult." Fla. Stat. § 415.102 (8)(a)(1) (emphasis added).

Accordingly, the Eleventh Circuit has held that a plaintiff fails to state a claim under Fla. Stat. § 415.1111 where he fails to allege that the defendant "*intended* to deprive him of the use of his funds" and, instead, merely alleges that the defendant "allowed" or "facilitated" his exploitation by others. *See Cordero v. Transamerica Annuity Serv. Corp.*, 71 F.4th 843, 846 (11th Cir. 2023) (emphasis in original).

Count 3: Fraud. Under Florida law, fraud claims require five separate elements: (1) a false statement concerning a material fact; (2) knowledge of falsity; (3) intent to induce reliance; (4) reliance; and (5) injury. *See, e.g.*, *Horne v. Soc. Sec. Admin.*, 359 F. App'x 138, 145 (11th Cir. 2010); *Bailey v. Covington*, 317 So. 3d 1223, 1227-28 (Fla. Dist. Ct. App. 2021). A plaintiff must assert "*actual* knowledge of falsity" in order to satisfy the "knowledge of falsity" element. *See, e.g.*, *Bruhl v. Conroy*, No. 03-23044-CIV, 2007 WL 983228, at *8 (S.D. Fla. Mar. 27, 2007) (emphasis added).

Count 9: Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030). The Computer Fraud and Abuse Act ("CFAA") provides a cause of action at 18 U.S.C. § 1030(g) to individuals who suffer "loss or damage" due to a defendant's underlying violation of the CFAA. *See* 18 U.S.C. § 1030(g). Plaintiff premises her CFAA claim on Northern Trust's alleged violations of 18 U.S.C. § 1030(a)(4) (*see* Compl. ¶ 156), which prohibits certain computer-related misconduct committed "*knowingly and with intent to defraud*." 18 U.S.C. § 1030(a)(4) (emphasis added); *see TracFone Wireless, Inc. v. Adams*, 98 F. Supp. 3d 1243, 1252–53 (S.D. Fla. 2015) ("To establish a claim under § 1030(a)(4) of the CFAA, the plaintiff must demonstrate an

8

additional element-that the defendant accessed the protected computer *knowingly and with intent to defraud*.") (emphasis added).

### B.      The Complaint Fails to Allege Northern Trust Acted with Knowledge or Intent

The Complaint fails to allege that Northern Trust had any knowledge of Walters' criminal scheme, much less that Northern Trust *intentionally* did anything to further it. To the contrary, the Complaint alleges that Northern Trust "***failed to uncover***" Walters' criminal conduct and that it "***never caught on to the fraud and theft***." Compl. ¶ 52 (emphasis added). Indeed, the Complaint asserts that Northern Trust only became aware of Walters' scheme in February 2025, after Plaintiff had moved her trust assets to a different financial institution and several months after Walters' employment with Northern Trust had already ended. *Id.* ¶ 51. To state the obvious, Northern Trust could not have *intentionally* furthered Walters' scheme if it had no knowledge of it whatsoever. *See, e.g.*, *Funding Metrics, LLC v. Decision One Debt Relief LLC*, No. 18-81061-CIV, 2019 WL 861268, at *7 (S.D. Fla. Feb. 22, 2019) ("The Complaint lacks sufficient facts to plausibly establish that the Veritas Defendants knew that a fraud was occurring. Without this knowledge, there cannot be the requisite intent to defraud, nor can there be aiding and abetting liability for the fraudulent acts of others.").

The Complaint sets forth a litany of conclusory allegations that Northern Trust "had a specific intent to harm Mrs. Madden" and that it "actively and knowingly participated in the theft of Mrs. Madden's Trust." Compl. ¶¶ 78, 89, 102, 123, 131. These conclusory statements cannot be reconciled, however, with the Complaint's allegation that Northern Trust ***never even became aware*** of Walters' criminal activity until well after his employment with the company had ended. The Court should therefore disregard these conclusory statements as mere "legal conclusions masquerading as facts." *Oxford Asset Mgmt*, 297 F.3d at 1188.

9

Stripped of these bare legal conclusions, the allegations in the Complaint boil down to assertions that Northern Trust "allowed" or "facilitated" Walters' criminal misconduct by failing to uncover it. *See* Compl. ¶¶ 2, 17. But these allegations are insufficient to state an intent-based claim. *See*, *e.g.*, *Cordero*, 71 F.4th at 846 (dismissing Fla. Stat. § 415.1111 claim where "Cordero does not allege that Transamerica intended to deprive him of the use of his funds. Instead, Cordero asserts that Transamerica 'allowed' (or 'facilitated') his exploitation by the factoring companies, which resulted in an unauthorized taking of his assets.") (internal citation omitted).

In a last-ditch effort, the Complaint seeks to impute Walters' intent to Northern Trust by repeatedly alleging that Northern Trust acted "*through* its Vice President Walters." Compl. ¶¶ 75, 96, 102, 153, 157; *see also id.* ¶ 73 ("Vice President Walters's conduct therefore constitutes the conduct of Northern Trust itself.). Plaintiff cannot impute Walters' knowledge or intent to Northern Trust, however, because—by the Complaint's own admission—Walters was a "rogue employee" who was acting "***for his own personal benefit***" rather than in furtherance of Northern Trust's interests. As courts have explained, the "knowledge and misconduct of an agent will not be imputed to a principal if an agent is 'secretly . . . acting adversely to the principal and entirely for his own or another's purposes.'" *LanChile Airlines v. Connecticut Gen. Life Ins. Co. of N. Am.*, 759 F. Supp. 811, 814 (S.D. Fla. 1991) (quoting Restatement (Second) of Agency § 282)). Again, the Complaint expressly alleges that Walters was acting "secretly" and "entirely for his own" purposes, such that Northern Trust was not even aware of his criminal scheme until well after it had ended. Accordingly, Walters' knowledge conduct cannot be imputed to Northern Trust. *See also infra* Section III (vicarious liability).

For all of these reasons, the Court should dismiss each of Plaintiff's intent-based causes of action (Counts 1, 3, and 9).

10

II.     **PLAINTIFF FAILS TO MEET THE HEIGHTENED PLEADING STANDARD REQUIRED FOR COUNTS 3, 4, 9, AND 10 (FRAUD AND CFAA)**

Counts 3 (fraud), 4 (vicarious liability for fraud), 9 (CFAA), and 10 (vicarious liability for CFAA) fail for the independent reason that the Complaint fails to meet the heightened pleading standard required by Fed. R. Civ. P. 9(b).

Rule 9(b) requires that fraud claims be pled with particularity. *See Day v. Datta*, No. 22-CV-22572-JLK, 2024 WL 6862109, at *4 (S.D. Fla. Sept. 30, 2024). Courts have also held that Rule 9(b)'s heightened pleading standard applies where, as here, a plaintiff asserts a CFAA claim on the basis of 18 U.S.C. § 1030(a)(4). *See Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1072 (N.D. Cal. 2018) ("For the § 1030(a)(4) claim, defendants must also allege facts supporting a knowing intent to defraud defendants with particularity under Rule 9.").

In order to satisfy Rule 9(b)'s heightened pleading requirement, a complaint must set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006). "General conclusory allegations are not enough." *Ruff v. Allianz Life Ins. Co. of N. Am.*, No. 6:19CV1709-Orl-DCI, 2020 WL 8918198, at *4 (M.D. Fla. July 9, 2020) (granting motion to dismiss fraud claim for failure to meet heightened pleading standard of Rule 9(b)).

Plaintiff's Complaint falls woefully short of Rule 9(b)'s heightened pleading standard. As explained above, the Complaint's only allegations regarding Northern Trust's supposed "intent to defraud" are entirely conclusory and should be disregarded as mere legal conclusions. Moreover,

11

the Complaint makes no attempt to allege "what [Northern Trust] obtained as a consequence of the fraud."

Additionally, the Complaint fails to identify any specific statements or omissions that were made, or the time or place of such statements or omissions. Instead, the Complaint provides only generalized allegations about Walters' embezzlement scheme. In fact, the only alleged "misstatements" the Complaint identifies for purposes of Plaintiff's fraud claim are Walters' generic statements that he:

- "would act in Mrs. Madden's best financial interests";

- "would undertake investment strategies to protect the Trust's assets";

- "had knowledge of the financial market and its trends"; and

- "would be transparent in all transactions and prioritize the Trust's wellbeing over his own, while acting with loyalty and good faith."

Compl. ¶¶ 97, 106. None of these generic, conclusory allegations comes anywhere close to meeting the exacting pleading standard required for fraud.[1]

Furthermore, the Complaint fails to allege that Plaintiff took any action in reliance on any supposed false statements. The Florida Supreme Court has explained that "reliance requires the plaintiff to have 'received, believed, ***and acted upon***' a misrepresentation by the defendant." *Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 838 (Fla. 2022) (emphasis added). Here, the Complaint does not contain any allegation regarding how Plaintiff "acted upon" any supposed misrepresentation by Northern Trust or Walters.

---

[1] The Complaint also alleges that Walters "committed fraud" by and making credit card, rental, and other miscellaneous payments using Plaintiff's funds. Compl. ¶¶ 100, 109. None of these are "statements" or "omissions" for purposes of a fraud claim.

Accordingly, Counts 3 (fraud), 4 (vicarious liability for fraud), 9 (CFAA), and 10 (vicarious liability for CFAA) should be dismissed for failure to meet the heightened pleading standard required by Rule 9(b).

**III.  COUNTS 2, 4, 6, AND 10 (VICARIOUS LIABILITY) SHOULD BE DISMISSED BECAUSE THE COMPLAINT MAKES CLEAR THAT WALTERS WAS ACTING FOR HIS OWN PERSONAL BENEFIT RATHER THAN FOR NORTHERN TRUST**

Counts 2, 4, 6, and 10 each seek to impose vicarious liability on Northern Trust for Walters' unauthorized actions. However, the Complaint's own allegations establish that Walters undertook his embezzlement scheme "*for his own personal benefit*" and that Northern Trust never even discovered the scheme until after it had ended. Accordingly, the Court should dismiss Counts 2, 4, 6, and 10 because the Complaint itself makes clear that Walters was acting outside the scope of his employment.

**A.  The Complaint's Own Allegations Make Clear that Walters Was Acting Outside the Scope of His Employment**

"Florida law is well settled that an employer is not vicariously liable for an employee's actions when the employee is acting outside the scope of his or her employment." *Campo v. Uber Technologies, Inc.,* 407 So. 3d 503, 506 (Fla. 3d DCA 2025). "An employee's actions fall within the scope of employment when (1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master." *Letourneau v. City of Pembroke Pines*, No. 17CV60082, 2017 WL 9362841, at *3 (S.D. Fla. Apr. 4, 2017) (internal citation omitted).

Plaintiff's Complaint is devoid of facts that could possibly suggest that Walters' conduct was "of the kind he was employed to perform," or that it served Northern Trust in any way. To the contrary, the Complaint expressly alleges that Walters was a "*rogue employee*" who committed

13

his criminal scheme "*for his own personal benefit*." Compl. ¶¶ 32, 42 (emphasis added). As the Complaint explains, Walters stole Plaintiff's assets "to fund failed business ventures such as his failed gym, to make monthly rental payments on his failed gym, to satisfy personal credit card debts, and to support his lifestyle." Compl. ¶ 16. None of these actions was even remotely "of the kind" that Walters was "employed to perform," nor did these actions serve Northern Trust's interests in any way. Walter's actions in stealing from Northern Trust's clients for his own personal benefit were directly contrary to Northern Trust's interests.

The Complaint makes much of the fact that Walters had access to Plaintiff's accounts by virtue of his employment with Northern Trust. However, "[a] finding that an employee was acting within the scope of his or her employment simply because the employee acted while at work ignores the possibility that an employee may, at times, act for purely personal reasons in the workplace." *Letourneau,* 2017 WL 9362841, at *4; *see also Watts v. City of Hollywood, Florida,* 146 F. Supp. 3d 1254, 1265 (S.D. Fla. Nov. 17, 2015) (rejecting vicarious liability argument that did "not account for the obvious possibility an employee could use an employer's resources for entirely personal reasons").

Courts have dismissed vicarious liability claims where "Plaintiff provided no facts to demonstrate the actions were to serve the employment." *McConley v. Wells Fargo Bank, N.A.,* 2025 WL 3190880, at *7 (N.D. Fla. Oct. 15, 2025), *report and recommendation adopted*, 2025 WL 3033907 (N.D. Fla. Oct. 29, 2025); *see also Duncan v. NCS Pearson, Inc.,* No. 22-80285CIV, 2023 WL 8250639, at *3 (S.D. Fla. Oct. 10, 2023). Courts have likewise dismissed vicarious liability claims where, as here, an employee acted for "purely personal reasons." *Letourneau,* 2017 WL 9362841, at *4 (internal citation omitted); *see also Watson v. Kingdom of Saudia Arabia,* 159 F. 4th 1234, 1269 (11th Cir. 2025) (affirming dismissal of claim for vicarious liability because "it

14

[] fails as a matter of logic that [employers'] interests would be served through" the purported agent's actions). Because the Complaint's own allegations—and undisputed facts—make clear that Walters was a "rogue employee" acting entirely "for his own personal benefit," Plaintiff's vicarious liability claims (Counts 2, 4, 6, and 10) should be dismissed.

**B.      The Complaint Fails to Allege that Northern Trust Ratified Walters' Actions**

The Complaint also offers a patchwork of conclusory allegations that Northern Trust "ratified" Walters' conduct. *See, e.g.* Compl. ¶¶ 88, 112 (alleging "[u]pon information and belief" that Northern Trust "knowingly condoned, ratified, or consented to Vice President Walters' conduct"). An employer can be held vicariously liable for an employee's conduct under Florida law if it "later ratifies the actions by accepting their benefit." *Optio Rx, LLC v. Crestview City Pharmacy, Inc.*, No. 3:23CV08993-MCR-HTC, 2023 WL 11762892, at *5 (N.D. Fla. Nov. 9, 2023). However, ratification only exists "when the benefits of the purportedly unauthorized acts are accepted with ***full knowledge*** of the facts under circumstances demonstrating the intent to adopt the unauthorized arrangement." *National Auto Lenders, Inc. v. SysLOCATE, Inc.,* 686 F. Supp. 2d 1318, 1323 (S.D. Fla. 2010) (*citing In re Securities Group*, 926 F.2d 1051, 1054 (11th Cir.1991)) (emphasis added).

Here, the Complaint expressly alleges that Northern Trust ***was not aware of Walters' misconduct*** until well after it had already ended. Because there are no facts to support Plaintiff's conclusory assertions that Northern Trust ratified Walters' scheme "with full knowledge of the facts" or with the "intent to adopt the unauthorized arrangement," the Complaint fails to plead a ratification theory to support vicarious liability. *See Noshirvan v. Couture,* No. 2:23CV1218-JES-KCD,* 2025 WL 1769669, at *18 (M.D. Fla. Jun. 26, 2025) (dismissing ratification theory because allegations that "defendants were 'aware of' and 'ratified' [agent's] actions . . . are conclusory and

15

fail to sufficiently allege ratification"); *Doe #1 v. Red Roof Inns, Inc.,* 21 F. 4th 714, 729 (11th Cir. 2021) (allegations that franchisors "assisted or at the very least, turned a blind eye" to misconduct "does not rise to the level of plausibly alleging the franchisors' full knowledge of *all material facts*").

### C.   Count 10 (Vicarious Liability Under the CFAA) Should Be Dismissed For an Additional Reason

In addition to the reasons above, Count 10 should be dismissed for the additional reason that vicarious liability is either not cognizable under the CFAA or only permitted in narrow circumstances not present here.

Several courts have held that vicarious liability is simply not cognizable under the CFAA. *See Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1343 (N.D. Ga. 2017) (finding no vicarious liability under plain language of CFAA; *Doe v. Dartmouth–Hitchcock Med. Ctr.*, No. CIV. 00-100-M, 2001 WL 873063, at *6 (D.N.H. July 19, 2001) ("[N]either the language nor the purpose of the CFAA are consistent with holding the . . . defendants vicariously liable.").

Even courts that do recognize vicarious liability under the CFAA do so only in narrow circumstances. Those courts have held that in order to allege vicarious liability under the CFAA, a plaintiff must plead that a defendant "explicitly or implicitly took part in, encouraged, directed, induced and/or benefitted from" the wrongdoer's unauthorized access of the computer systems at issue. *See PLC Trenching Co., LLC v. Newton,* No. 6:11-CV-0515, 2011 WL 13135653, at *7 (N.D.N.Y. Dec. 12, 2011) ("To state a claim for vicarious liability under the CFAA, a plaintiff must allege facts that would plausibly suggest that [] the defendant affirmatively urged or encouraged its employee to violate the CFAA.") (collecting cases). Here, Plaintiff only asserts conclusory allegations that Northern Trust knowingly and affirmatively furthered Walters'

16

scheme. Accordingly, this represents a separate basis on which Count 10 of Plaintiff's Complaint should be dismissed.

**IV.     COUNTS 9 AND 10 (CFAA) SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A CLAIM FOR "DAMAGE OR LOSS" UNDER THE CFAA**

The CFAA provides a cause of action at 18 U.S.C. § 1030(g) to a plaintiff who suffers "damage or loss" due to a defendant's intentional violation of the CFAA. *See* 18 U.S.C. § 1030(g). As explained above, Plaintiff's CFAA claims should be dismissed because Plaintiff fails to plead any intentional conduct on attributable to Northern Trust, and because Plaintiff fails to meet the heightened pleading standard applicable to CFAA claims under Rule 9(b).

Plaintiff's CFAA claims should also be dismissed because she fails to plead any "damage or loss" as those terms are defined by the CFAA. The CFAA is "primarily a criminal statute designed to combat hacking." *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 201 (4th Cir. 2012); *see also* (*Trademotion, LLC v. Marketcliq, Inc.*, 857 F. Supp. 2d 1285, 1289–90 (M.D. Fla. 2012). ("[T]he CFAA was designed to target hackers who access computers to steal information or to disrupt or destroy computer functionality."). As such, its definitions of "damage or loss" relate specifically to losses that arise from damage or disruption to computer systems due to the unauthorized and wrongful acts of bad actors.

Specifically, the CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Plaintiff alleges that money was stolen from her; she does not allege any "impairment to" or unavailability of any computer data, programs, systems, or information. Accordingly, she has not suffered "damage" within the meaning of the CFAA.

The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program,

17

system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11) (emphasis added). Thus, the CFAA only recognizes two categories of "losses": "(1) 'direct costs of responding to the violation' and (2) 'consequential damages resulting from interruption of service.'" *Schwartz v. ADP, Inc.*, No. 2:21-CV-283-SPC-MRM, 2021 WL 5760434, at *2 (M.D. Fla. Dec. 3, 2021) (quoting *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017)). "The first category of loss encompasses remedial actions taken in response to the breach giving rise to the CFAA claim," such as costs associated with "hir[ing] an outside expert to conduct a forensic computer evaluation of [the] computer systems to determine the damage and improper access attributable to the defendants." *My Energy Monster, Inc. v. Gawrych*, No. 8:20-CV-2548-MSS-AEP, 2021 WL 6125579, at *3 (M.D. Fla. Sept. 29, 2021) (internal quotation marks and citations omitted) (brackets in original). "The second category of loss encompasses 'consequential damages'—including lost revenue—'resulting from interruption of service.'" *My Energy Monster, Inc.*, 2021 WL 6125579, at *3 (quoting *Brown Jordan Int'l, Inc.* 846 F.3d at 1174). Courts have explained that an "interruption of service" refers to "a disruption to the plaintiff's computer system caused by the defendant's acts." *Mortg. Now, Inc. v. Stone*, No. 3:09CV80/MCR/MD, 2010 WL 11519201, at *5 (N.D. Fla. Sept. 29, 2010).

The recovery Plaintiff seeks on her CFAA claims is "the loss of millions of dollars in Trust assets" and "lost investment opportunities." Compl. ¶¶ 161, 173. Plaintiff's Complaint does not allege any "remedial actions taken in response" to Walters' alleged breach of computer systems, such as the hiring of a forensic experts to assess damage to those systems. While Plaintiff does allege consequential damages in the form of "lost investment opportunities," she does not allege

18

that those damages arose from any "*interruption of service*"—*i.e.*, any disruption to her computer systems.

Accordingly, Plaintiff fails to state a claim for "loss or damage" under the CFAA, and her CFAA claims should be dismissed accordingly.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that Plaintiff's Complaint be dismissed as to Counts 1-4, 6, 9, and 10.

DATED: February 20, 2026                    Respectfully submitted,

 

                                     */s/ Barry Kamar*

Barry Kamar
Florida Bar No. 1033842
bkamar@kslaw.com
miamilit@kslaw.com
**KING & SPALDING LLP**
200 S. Biscayne Blvd., Suite 4700
Miami, FL 33131
Telephone: (305) 462-6000

Craig Carpenito
ccarpenito@kslaw.com
(*pro hac vice* filing forthcoming)
Alvin Lee
alvin.lee@kslaw.com
(*pro hac vice* filing forthcoming)
**KING & SPALDING LLP**
1290 Avenue of the Americas
14th Floor
New York, NY 10104
Telephone: (212) 556-2100

*Attorneys for Defendant*
*The Northern Trust Company*

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed on February 20, 2026.

with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing

to counsel for the parties registered on the CM/ECF system.

/s/ Barry Kamar
Barry Kamar
Florida Bar No. 1033842
