**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:26-CV-20556-JB-EGT

ELIZABETH MADDEN, individually
and as co-trustee of the Elizabeth Ludwig
Madden Revocable Trust,

     *Plaintiff,*

v.

THE NORTHERN TRUST COMPANY,
a foreign banking corporation and
co-trustee of the Elizabeth Ludwig
Madden Revocable Trust,

     *Defendant*.

**DEFENDANT THE NORTHERN TRUST COMPANY'S REPLY BRIEF IN FURTHER
SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT**

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** .................................................................................................. 1

**ARGUMENT** ............................................................................................................................. 1

I.     PLAINTIFF'S INTENT-BASED CLAIMS FAIL (COUNTS 1, 3, AND 9) ..................... 1

II.    PLAINTIFF'S FRAUD-BASED CLAIMS FAIL (COUNTS 3, 4, 9, AND 10) ................ 3

      A.     Rule 9(b) Applies to All of Plaintiff's Fraud-Based Claims .................................. 3

      B.     Plaintiff Fails to Satisfy Rule 9(b) on Her Fraud-Based Claims ........................... 4

III.   COUNTS 2, 4, 6, AND 10 (VICARIOUS LIABILITY) SHOULD BE DISMISSED ...... 7

      A.     The Apparent Agency Doctrine Does Not Apply .................................................. 7

      B.     The Complaint Shows Walters Acted Outside the Scope of His Employment ...... 8

IV.   PLAINTIFF'S CFAA CLAIMS (COUNTS 9 AND 10) SHOULD BE DISMISSED ...... 9

      A.     Plaintiff Does Not Allege "Damage or Loss" Within the Meaning of the CFAA .. 9

      B.     Count 10 (Vicarious Liability) Should Be Dismissed For a Separate Reason ..... 10

**CONCLUSION** ......................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu v. Dickson*,
 107 F.4th 508 (6th Cir. 2024) ................................................................................10

*Arko Plumbing Corp. v. Michael Rudd*,
 No. 13-CV-22434-UU, 2013 WI 1120521 (S.D. Fla. Nov. 21, 2013) ....................10

*Borg-Warner Leasing, a Div. of Borg-Warner Acceptance Corp. v. Doyle Elec. Co.*,
 733 F.2d 833 (11th Cir. 1984) ..................................................................................7

*Chang v. JPMorgan Chase Bank, N.A.*,
 845 F.3d 1087 (11th Cir. 2017) ................................................................................2

*De Szterensus v. Bank of Am., N.A.*,
 No. 08-22669-CIV, 2009 WL 10667423 (S.D. Fla. Sept. 28, 2009)........................8

*Hennagan v. Dep't of Highway Safety & Motor Vehicles*,
 467 So. 2d 748 (Fla. 1st DCA 1985) ........................................................................8

*Horne v. Soc. Sec. Admin.*,
 359 F. App'x 138 (11th Cir. 2010) ...........................................................................4

*Lemano Invs., LLC v. RGF Athena, LLC*,
 390 So. 3d 154 (Fla. 3d DCA 2024) .........................................................................3

*Lensa Corp. v. Poinciana Gardens Ass'n, Inc.*,
 765 So. 2d 296 (Fla. 4th DCA 2000) ........................................................................7

*Lopez–Infante v. Union Cent. Life Ins.*,
 809 So. 2d 13, 15 (Fla. 3d DCA 2002) .....................................................................4

*McMillan v. Dep't of Corr.*,
 No. 5:13-CV-292-WS-GRJ, 2016 WL 4059230 (N.D. Fla. July 8, 2016) ...............8

*MDVIP, Inc. v. Beber*,
 222 So. 3d 555 (Fla. Dist. Ct. App. 2017) ................................................................5

*Mejia v. Jurich*,
 781 So. 2d 1175 (Fla. Dist. Ct. App. 2001) ..............................................................5

1

*Moro-Romero v. Prudential-Bache Sec., Inc.*,
 No. 89-1821-CIV-DAVIS, 1991 WL 494175 (S.D. Fla. Aug. 26, 1991)..................................7

*Mortg. Now, Inc. v. Stone*,
 No. 3:09CV80/MCR/MD, 2010 WL 11519201 (N.D. Fla. Sept. 29, 2010)..............................9

*Otto Candies, LLC v. Citigroup Inc.,*
 137 F.4th 1158 (11th Cir. 2025) ........................................................................................11

*PLC Trenching Co., LLC v. Newton*,
 No. 6:11-CV-0515, 2011 WL 13135653 (N.D. N.Y. Dec. 12, 2011) ....................................10

*Prentice v. R.J. Reynolds Tobacco Co.*,
 338 So. 3d 831 (Fla. 2022)..........................................................................................4, 5, 6

*Sadarangani v. Bank of Am., N.A.*,
 No. 09-21001-CV-KING, 2009 WL 2175631 (S.D. Fla. July 21, 2009) ..................................8

*Scinica v. Bank of Am., N.A.*,
 No. 09-21470-CIV, 2010 WL 1257704 (S.D. Fla. Mar. 29, 2010) ......................................7, 9

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery,
 LLC*,
 278 F. Supp. 3d 1307 (S.D. Fla. 2017) ..................................................................................6

*Taillard v. Mercedes-Benz USA, LLC*,
 805 F. Supp. 3d 1235 (S.D. Fla. 2025) ...................................................................................3

*United Techs. Corp. v. Mazer*,
 556 F.3d 1260 (11th Cir. 2009) .........................................................................................7, 8

*Wasser v. Sasoni*,
 652 So. 2d 411 (Fla. 3d DCA 1995) .......................................................................................5

**Statutes**

18 U.S.C. § 1030(e)(8)......................................................................................................................9

**Other Authorities**

Federal Rule of Civil Procedure 8(a) ...............................................................................................3

Federal Rule of Civil Procedure 9(b).............................................................................................3, 4

**PRELIMINARY STATEMENT**

Plaintiff's Opposition (ECF 14) confirms that the Complaint should be partially dismissed. While Plaintiff makes much of the fact that Northern Trust previously pled similar claims in its own lawsuit against Christopher Walters, this ignores that Northern Trust—as Walters' former employer—suffered different injuries from Plaintiff stemming from Walters' misconduct. Moreover, Plaintiff's Opposition repeatedly seeks to sidestep the legal requirements applicable to her various claims and, instead, asks the Court to conclude that because Plaintiff undisputedly suffered an injury, this necessarily means she can adequately plead any cause of action. In doing so, Plaintiff completely ignores the actual legal standards that apply to her claims as well as the controlling authorities cited throughout Northern Trust's opening brief. Accordingly, Counts 1-4, 6, 9, and 10 of Plaintiff's Complaint should be dismissed.

**ARGUMENT**

**I.      PLAINTIFF'S INTENT-BASED CLAIMS FAIL (COUNTS 1, 3, AND 9)**

Plaintiff concedes that Counts 1, 3, and 9 of her Complaint require a showing of intentional misconduct, and she further concedes that her Complaint does not allege any intentional misconduct committed by Northern Trust itself. Opp. at 2.

Instead, Plaintiff argues that intent should be "imputed" to Northern Trust through the misconduct of its former employee, Walters. Conversely, however, Plaintiff acknowledges that where an employee's wrongful acts are neither "'intended to benefit the corporation nor actually cause short- or long-term benefit to the corporation,'" then the employee's conduct *cannot* be imputed to his employer. Opp. at 5 (quoting *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1180 (11th Cir. 2025)). Plaintiff's Complaint expressly refers to Walters as a "rogue employee" who undertook his scheme "*for his own personal benefit*" rather than for the benefit of Northern

1

Trust. Compl. ¶ 42 (emphasis added). By Plaintiff's own admission, therefore, Walters' conduct cannot be imputed to Northern Trust.

Plaintiff relies heavily on *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087 (11th Cir. 2017) in arguing that Walters' conduct can somehow still be imputed to Northern Trust because it supposedly received "benefits" from Walters' scheme in the form of trust management fees. Opp. at 6. But *Chang* is inapposite because it makes clear that the critical inquiry for imputation is whether the alleged "benefits" an employer received arose directly out of the employee's misconduct—*i.e.*, whether the misconduct had a causal relationship with the employer's supposed benefits. In *Chang*, JPMorgan derived two sets of benefits that arose directly out of its employee's misconduct: (1) "very substantial deposits" that the employee obtained for the bank from a criminal actor that the bank would not have been received but-for the employee's actions; and (2) "wire and service fees" that the employee obtained for the bank that it would not have received but-for the employee's actions. *Id*. at 1091-92, 1096. Here, conversely, Plaintiff does not allege that Northern Trust derived any benefit arising directly out of Walters' misconduct. Instead, Plaintiff alleges that she first engaged Northern Trust to manage her trust funds in 1971—decades before Walters ever started working there in 2000 (Compl. ¶¶ 6, 15)—and that Northern Trust simply "*continued* to collect" the same management fees as it always had "during [Walters'] period of exploitation." Opp. at 6 (emphasis added). She does not allege any increase in or additional fees that resulted from Walters' misconduct—*i.e.*, any fees that Northern Trust would not have received *but-for* Walters' misconduct. Compl. ¶¶ 48, 160. Because the Complaint fails to allege any benefits that arose directly out of Walters' misconduct, his actions cannot be imputed to Northern Trust.

Plaintiff erroneously attempts to apply the "sole actor doctrine" as a basis for imputing Walters' bad acts to Northern Trust. Opp. at 6-7. The sole actor doctrine, however, only applies

2

where a single individual is "*solely* responsible for transacting the company's business." *Lemano Invs., LLC v. RGF Athena, LLC*, 390 So. 3d 154, 161 (Fla. 3d DCA 2024) (emphasis added); *see also id.* at 159 (applying sole actor doctrine where evidence showed that individual "was allowed to operate as [the company's] sole actor *with no oversight*") (emphasis added). Plaintiff's Complaint alleges that Walters was not the only individual involved in the services Northern Trust rendered to Plaintiff. Indeed, the Complaint is replete with allegations that other individuals at Northern Trust bore responsibility for supervising Walters' administration of Plaintiff's trust accounts. Compl. ¶¶ 18, 37, 39, 42, 138, 140. The sole actor doctrine therefore does not apply.

Because Plaintiff's own Complaint demonstrates that Walters' acts cannot be imputed to Northern Trust, each of Plaintiff's intent-based claims should be dismissed.

## II.   PLAINTIFF'S FRAUD-BASED CLAIMS FAIL (COUNTS 3, 4, 9, AND 10)

### A.   Rule 9(b) Applies to All of Plaintiff's Fraud-Based Claims

Seemingly recognizing the pleading deficiencies in her fraud-based claims, Plaintiff seeks to evade Rule 9(b)'s heightened pleading standard based on two meritless arguments.

Plaintiff first argues that Rule 9(b) does not apply to her fraud-based claims premised on vicarious liability (Counts 4 and 10). Opp. at 7. But courts have made clear that even though Rule 8(a)'s lower plausibility standard applies to pleading "an agency relationship" for purposes of vicarious liability, a plaintiff is still required to satisfy Rule 9(b) in pleading *the circumstances of the underlying fraud* committed by an alleged agent. Indeed, in *Taillard v. Mercedes-Benz USA, LLC*, which Plaintiff herself cites, the court explained that even though "an agency relationship establishing vicarious liability for fraud generally does not have to be pleaded with particularity," Rule 9(b) still "requires that a plaintiff plead with specificity *the circumstances constituting fraud.*" 805 F. Supp. 3d 1235, 1248 (S.D. Fla. 2025) (emphasis added) (internal quotation marks and citations omitted). Here, therefore, even if Plaintiff is only required to meet Rule 8(a) with respect

to the alleged "agency relationship" between Walters and Northern Trust, she is still required to plead the underlying circumstances constituting Walters' fraud with particularity.

Plaintiff next suggests that Rule 9(b) should apply with less force here because "[t]he purpose of Rule 9(b) is notice" (Opp. at 11) and Northern Trust is already on "notice" of Walters' embezzlement scheme. *Id.* However, Plaintiff cites no authority supporting the notion that Rule 9(b) can be cast aside in such circumstances. Indeed, this would make no sense as fraud defendants presumably always have notice of the wrongful acts they allegedly committed. Thus, Plaintiff cannot escape Rule 9(b)'s heightened pleading standard for any of her fraud-based claims.

### B.        Plaintiff Fails to Satisfy Rule 9(b) on Her Fraud-Based Claims

Plaintiff essentially argues that because Northern Trust adequately pled a fraud claim against Walters in its own lawsuit against him, that must mean Plaintiff has adequately pled a fraud claim against Northern Trust here as well. Opp. at 1, 10-12. Not so.

A fraud claim requires, among other things, "a false statement concerning a specific material fact" and "the other party acting in reliance on the representation." *Horne v. Soc. Sec. Admin.*, 359 F. App'x 138, 145 (11th Cir. 2010) (quoting *Lopez–Infante v. Union Cent. Life Ins. Co.*, 809 So. 2d 13, 15 (Fla. 3d DCA 2002)). In Northern Trust's own complaint against Walters, it specified a number of "false statements of specific material fact" that Walters made *to Northern Trust* as well as specific actions that Northern Trust took in reliance on his false statements. Walters Compl. ¶¶ 11, 13, 14 (ECF 1, *The Northern Trust Company v. Christopher Walters*, No. 1:25-cv-23802).

Here, by contrast, Plaintiff has not identified any "false statement concerning a specific material fact" that Walters made *to her*, nor has she alleged any action she took in reliance on any supposed false statements. She cannot rely on misstatements that Walters made *to Northern Trust* because those statements were not directed at her. *See Prentice v. R.J. Reynolds Tobacco Co.*, 338

4

So. 3d 831, 840 (Fla. 2022) ("Only recipients of the defendants' statements were capable of being deceived by those statements."). And although the Complaint sets forth generalized allegations about Walters' overall embezzlement scheme (Opp. at 10), it does not identify any "false statements" for purposes of stating a fraud claim. The Florida Supreme Court has explained: "Fraud is effected *through representations*." *Prentice*, 338 So. 3d at 838 (Fla. 2022) (emphasis added). Simply put, Plaintiff has not identified any false "representations" that were made to her.

As explained in Northern Trust's opening brief, the only supposed "false statements" identified in Plaintiff's Complaint are generic statements by Walters that he:

- "would act in Mrs. Madden's best financial interests";

- "would undertake investment strategies to protect the Trust's assets";

- "had knowledge of the financial market and its trends"; and

- "would be transparent in all transactions and prioritize the Trust's wellbeing over his own, while acting with loyalty and good faith."

Compl. ¶ 97. Florida courts have made clear that this sort of generic "puffing" or statements of opinion "do not constitute fraudulent misrepresentations." *Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. 3d DCA 1995); *see also MDVIP, Inc. v. Beber*, 222 So. 3d 555, 561 (Fla. Dist. Ct. App. 2017) ("A promise to deliver an 'exceptional' product or service is a matter of opinion rather than fact, and constitutes non-actionable puffery."). Florida courts have likewise explained that a fraud claim cannot be based on "promises of future action, but rather must be based on a statement concerning a past or existing fact." *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. Dist. Ct. App. 2001). As evidenced above, all of the alleged misstatements in Plaintiff's Complaint are either generic "puffery" or "promises of future action" and therefore cannot form the basis of a fraud claim.

Grasping at straws, Plaintiff argues that she is not required to recite every single false statement made to her because Walters' embezzlement scheme took place over an extended period

5

of time. Opp. at 9. But Plaintiff does not identify a *single* actionable false statement that was made to her. Indeed, the lone case Plaintiff cites in support of this argument proves the point. In *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1321 (S.D. Fla. 2017), the court allowed the plaintiff's fraud claim to proceed against a certain subset of defendants despite the fact that the plaintiff did not allege "the exact date and time every false statement was made." However, the court dismissed the plaintiff's fraud claim against certain other defendants because it was based solely on conclusory allegations regarding those defendants' supposed misrepresentations. *Id.* Here, Plaintiff has not simply omitted "the exact date and time" that false statements were supposedly made to her—she has failed to identify any actionable false statements to begin with.

Finally, and as explained in Northern Trust's opening brief, Plaintiff fails to allege that she took any action in reliance on any supposed false statements. The Florida Supreme Court has explained: "[R]eliance requires the plaintiff to have received, believed, and ***acted upon*** a misrepresentation by the defendant." *Prentice*, 338 So. 3d 831, 838 (Fla. 2022) (emphasis added) (internal quotation marks and citation omitted). The Complaint contains no allegations regarding how Plaintiff supposedly "*acted upon*" Walters' supposed misstatements. All the Complaint can muster is the conclusory allegation that "Mrs. Madden reasonably and justifiably relied on those representations, which led to extensive financial abuse." Compl. ¶¶ 99, 108. The Complaint therefore fails to plead any allegations of reliance, and all of Plaintiff's fraud-based claims (Counts 3, 4, 9, and 10) should be dismissing accordingly.

6

### III.   COUNTS 2, 4, 6, AND 10 (VICARIOUS LIABILITY) SHOULD BE DISMISSED

#### A.   The Apparent Agency Doctrine Does Not Apply

Plaintiff attempts and fails to support her vicarious liability claims based on the apparent agency doctrine. Opp. at 13-15. "Three elements are needed to establish an apparent agency: (1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance upon such representation." *Lensa Corp. v. Poinciana Gardens Ass'n, Inc.*, 765 So. 2d 296, 298 (Fla. 4th DCA 2000). As explained above, Plaintiff has not identified any actionable representations by Northern Trust or Walters, nor has she alleged any "change in position" in reliance on such representations. *See supra* Section II(B). The apparent agency doctrine therefore does not apply.

The three cases Plaintiff cites in support of apparent agency are all distinguishable on these very grounds. In all three, the party asserting apparent agency claimed that it affirmatively changed position by entering into a specific transaction in reliance upon representations made by the other side's apparent agent. *See Borg-Warner Leasing, a Div. of Borg-Warner Acceptance Corp. v. Doyle Elec. Co.*, 733 F.2d 833, 836 (11th Cir. 1984) (defendant changed position by entering into guaranty in reliance upon apparent agent's representations); *Moro-Romero v. Prudential-Bache Sec., Inc.*, No. 89-1821-CIV-DAVIS, 1991 WL 494175, at *6 (S.D. Fla. Aug. 26, 1991) (plaintiff changed position by purchasing worthless certificate of deposit in reliance upon apparent agent's representations); *Scinica v. Bank of Am.*, N.A., No. 09-21470-CIV, 2010 WL 1257704, at *1 (S.D. Fla. Mar. 29, 2010) (plaintiff changed position by depositing over $4 million in certificates of deposits and money market accounts in reliance upon apparent agent's representations). Here, by contrast, Plaintiff has not alleged any affirmative "change in position" she undertook in reliance on any of Walters' alleged representations. Her apparent agency argument thus fails.

7

**B.**     **The Complaint Shows Walters Acted Outside the Scope of His Employment**

Plaintiff concedes that employers are not vicariously liable for actions of employees that are not "of the kind the employee was employed to perform" or are not "activated at least in part by a purpose to serve the employment." Opp. at 15 (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009)). Plaintiff cites a handful of cases in arguing that an employee's unauthorized acts can nonetheless be deemed within his scope of employment "where the employee's duties and authority created the very conditions that enabled the misconduct." Opp. at 15. But each of Plaintiff's cases involved a plausible inference that the employee sought "to serve the employment." In *Hennagan v. Dep't of Highway Safety & Motor Vehicles*, 467 So. 2d 748, 751 (Fla. 1st DCA 1985), a highway trooper assaulted a shoplifting suspect in the course of questioning her, and the court held that it was possible "to attribute the alleged actions of Trooper Jones, at least in part, to . . . overzealousness in the performance of his official duties." Likewise, in *McMillan v. Dep't of Corr.*, No. 5:13-CV-292-WS-GRJ, 2016 WL 4059230, at *8 (N.D. Fla. July 8, 2016), a corrections officer assaulted an inmate, and the court cited evidence in the case that such "inmate abuse . . . was tolerated or even encouraged by prison officials." And in *Mazer*, the court declined to dismiss the vicarious liability claim because "the complaint contains a degree of ambiguity regarding whether [the employee] acted for himself, for [his employer], or for both." 556 F.3d at 1273. Here, by contrast, Plaintiff's own Complaint alleges that Walters was a "*rogue employee*" who committed his scheme "*for his own personal benefit*" rather than for the benefit of Northern Trust. Compl. ¶¶ 32, 42 (emphasis added).

Finally, while the court denied a motion to dismiss a vicarious liability claim involving a bank employee's criminal misconduct in *Sadarangani v. Bank of Am., N.A.*, No. 09-21001-CV-KING, 2009 WL 2175631, at *3-4 (S.D. Fla. July 21, 2009), two later decisions from this District involving the exact same employee's misconduct declined to find that the employee's actions fell

8

within the scope of his employment. *See Scinica*, 2010 WL 1257704, at *2; *De Szterensus v. Bank of Am., N.A.*, No. 08-22669-CIV, 2009 WL 10667423, at *2 (S.D. Fla. Sept. 28, 2009). *Sadarangani* thus has limited applicability here.

## IV.   PLAINTIFF'S CFAA CLAIMS (COUNTS 9 AND 10) SHOULD BE DISMISSED

### A.   Plaintiff Does Not Allege "Damage or Loss" Within the Meaning of the CFAA

As explained in Northern Trust's opening brief, the CFAA only provides a cause of action to individuals who suffer "damage or loss" as those terms are defined by the CFAA. *See* ECF 8 at 17. Plaintiff appears to concede she has not suffered any "damage" within the meaning of the CFAA, as that term is limited to the impairment of computer systems. *See* 18 U.S.C. § 1030(e)(8).

Plaintiff also concedes that a CFAA plaintiff can only recover two discrete categories of "losses"—namely, "(1) lost revenues and costs as a result of interruption of services, and (2) costs incurred in responding to a CFAA violation." Opp. at 20 (quoting *Hall v. Sargeant*, No. 18-80748-CIV, 2020 WL 1536435, at *31 (S.D. Fla. Mar. 30, 2020)). With respect to the first category, Plaintiff claims that she suffered "lost investment opportunities" and "consequential damages" as a result of Walters' scheme (Opp. at 20), but she does not tie those to any "interruption of services," which courts have explained refers to "a disruption to the plaintiff's computer system caused by the defendant's acts." *Mortg. Now, Inc. v. Stone*, No. 3:09CV80/MCR/MD, 2010 WL 11519201, at *5 (N.D. Fla. Sept. 29, 2010). Thus, she cannot recover those alleged "losses" under the CFAA.

With respect to the second category of recoverable "losses," Plaintiff asserts in a footnote that she "has incurred substantial costs (well in excess of $5,000) in investigating Walters' scheme and having a forensic review of the Trust's accounts conducted." Opp. at 20 n.4. Plaintiff further claims that she can, "by interlineation or otherwise, add a few words to Counts 9 and 10 to supplement the claim." *Id.* Plaintiff thus concedes that her Complaint does not actually allege she incurred any such costs. Even if the Court were to permit Plaintiff to supplement her CFAA claim,

9

it should nonetheless reject the portion of the claim seeking to recover the underlying amount Walters embezzled from her and her associated "lost investment opportunities," as those are not recoverable "losses" under the CFAA. *See* ECF 8 at 17-19.

**B.        Count 10 (Vicarious Liability) Should Be Dismissed For a Separate Reason**

Plaintiff does not address the myriad of cases holding that vicarious liability under the CFAA is only available where a plaintiff pleads that the defendant "affirmatively urged or encouraged its employee to violate the CFAA." *PLC Trenching Co., LLC v. Newton,* No. 6:11-CV-0515, 2011 WL 13135653, at *7 (N.D. N.Y. Dec. 12, 2011) (collecting cases). Plaintiff cites two cases for the proposition that vicarious liability under the CFAA is available "in the same manner that a typical tort claim in [sic] analyzed" (Opp. at 19), but neither of the cases supports that proposition. In *Arko Plumbing Corp. v. Michael Rudd*, the plaintiff alleged that the defendant "knew of and approved" its agent's hacking activities. No. 13-CV-22434-UU, 2013 WL 12120521, at *3 (S.D. Fla. Nov. 21, 2013). Plaintiff alleges that Northern Trust was unaware of Walters' misconduct, so it could not possibly have encouraged it. Compl. ¶ 52. The other case Plaintiff cites is even more inapposite, as the court rejected plaintiff's underlying CFAA claim altogether, and thus never reached the issue of whether plaintiff could recover for *vicarious* liability under the CFAA. *See Abu v. Dickson*, 107 F.4th 508, 518 (6th Cir. 2024). The Court should dismiss Count 10 on the independent basis that Plaintiff fails to plead Northern Trust "affirmatively urged or encouraged" Walters to violate the CFAA.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that Plaintiffs' Complaint be dismissed as to Counts 1-4, 6, 9, and 10.

10

Date: March 13, 2026

Respectfully submitted,

*/s/ Barry Kamar*
Barry Kamar
Florida Bar No. 1033842
bkamar@kslaw.com
miamilit@kslaw.com
**KING & SPALDING LLP**
200 S. Biscayne Blvd., Suite 4700
Miami, FL 33131
Telephone: (305) 462-6000

Craig Carpenito
ccarpenito@kslaw.com
(*pro hac vice* filing forthcoming)
Alvin Lee
alvin.lee@kslaw.com
(*pro hac vice* filing forthcoming)
**KING & SPALDING LLP**
1290 Avenue of the Americas
14th Floor
New York, NY 10104
Telephone: (212) 556-2100

*Attorneys for Defendant*
*The Northern Trust Company*

11

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that the foregoing was electronically filed on March 13, 2026. with

the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to

counsel for the parties registered on the CM/ECF system.

*/s/ Barry Kamar*
Barry Kamar
Florida Bar No. 1033842

12